John and Loretta Barksdale
*Pro Se Debtors*
1667 County Route 19
Richville, New York 13681

Christina E. Stone, Esq.
Slye & Burrows
*Attorneys for Creditor*
 *White's Lumber, Inc.*
104 Washington Street
Watertown, New York 13601

In Re:  John and Loretta Barksdale
        Chapter 7 Case No.: 08-63096

## LETTER-DECISION AND ORDER

Before the Court is the motion of John and Loretta Barksdale (collectively, "Debtors") filed in the above-referenced chapter 7 case on March 17, 2014 (the "Motion," ECF No. 54), wherein Debtors seek to avoid multiple judgment liens, including the judgment lien of White's Lumber, Inc. ("White's Lumber"), attached to Debtors' interest in two parcels of real property pursuant to 11 U.S.C. § 522(f)(1).[1]  The Motion was heard at the Court's regular motion term in Utica, New York on April 15, 2014, and continued to the Court's regular motion terms for supplemental submissions and oral argument on May 13, 2014, and June 16, 2014.  During oral argument, White's Lumber narrowed the scope of its opposition to contest Debtors' inclusion of one parcel of real property within their homestead exemption claimed under New York law.  As explained further herein, White's Lumber seeks to retain its lien on only one of the two parcels owned by Debtors.[2]  On June 16, 2014, the Court took the matter under advisement for issuance

---

[1] Debtors' former counsel filed a similar motion on May 16, 2013. (ECF No. 43.)  Attorney Stone responded to the same on behalf of White's Lumber by filing an Affirmation in opposition to the motion on June 3, 2013.  (ECF No. 49.)  The Court heard the motion on its regular motion term in Utica, New York on June 11, 2013, and denied the motion without prejudice upon finding that the moving papers were deficient.  The Court issued an Order to that effect on July 2, 2013.  (ECF No. 53.)  Debtors, now acting *pro se*, filed the instant Motion seeking identical relief.

[2] Although White's Lumber is the only creditor to have opposed the Motion, the Court's analysis is applicable to determine the outcome of the Motion as to all lienholders.  *See In re Schneider*, 2013 Bankr. LEXIS 4730, at *11 (Bankr. E.D.N.Y. Nov. 8, 2013) (Even in the absence of an objection, the bankruptcy court cannot grant affirmative

of this Letter-Decision and Order.  After consideration of the Motion, Attorney Stone's Affirmation and accompanying exhibits in opposition to the Motion filed on April 4, 2014 (ECF No. 57), Debtors' Affidavit and accompanying exhibits in support of the Motion filed on May 6, 2014 (ECF No. 59), Attorney Stone's Affirmation and accompanying exhibits in reply and opposition to the Motion filed on May 9, 2014 (ECF No. 60), Debtors' Affidavit and accompanying exhibits in further support of the Motion filed on May 29, 2014 (ECF No. 62), Attorney Stone's Affirmation and accompanying exhibits in further opposition to the Motion filed on June 10, 2014 (ECF No. 64), oral argument, and applicable case law, the Court determines that Debtor's motion must be granted in part and denied in part for the reasons that follow.

*Jurisdiction*

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b), and 157(a), (b)(1), (b)(2)(A), and (O).

*Facts*

Debtors filed a joint Voluntary Petition for chapter 7 relief under Title 11 of the United States Code[3] on December 29, 2008.  (ECF No. 1.)  They filed their Schedules and other required statements on January 13, 2009.  (ECF No. 9.)  Debtors received a chapter 7 discharge by Order dated March 3, 2011 (ECF No. 35), and the case was closed on March 15, 2011.  On November 8, 2012, Debtors filed a Motion to Reopen the case for the purpose of filing the

---

relief on a debtor's lien avoidance motion unless the debtor has established a prima facie basis for the relief sought.); *accord In re Kiproff*, 2006 Bankr. LEXIS 5160, at *1 (Bankr. N.D. Ind. Aug. 16, 2006) ("Despite the fact that the motion [was] unopposed, the court [could not] properly grant it because it fail[ed] to state a cognizable claim for lien avoidance pursuant to [11 U.S.C.] § 522(f)(1).").  The other lienholders are Graymont Materials Inc., Bank of America, Chase Bank, Chase, FIA Card Services, N.A., MX Fuels, Discover Bank, and Citibank, all of whom were properly served with the Motion but did not object.  The aggregate liens total $225,401.86 according to Debtors' recitation in the Motion.  White's Lumber's two liens comprise $110,742.14 of this amount, or 49%.
[3] 11 U.S.C. §§ 101–1532 (2012) (the "Bankruptcy Code").  Unless otherwise indicated, all further section references are to the Bankruptcy Code.

instant Motion. The Court heard and granted the Motion to Reopen by Order dated May 9, 2013. (ECF No. 42.)

On Schedule A, titled "Real Property," Debtors listed their joint ownership interest in "Real Property Located at 1167 CR. 19" (the "Main Parcel"), which they valued at $105,600.00. (ECF No. 9.) Debtors further indicated on Schedule A that the secured claims on the real property totaled $74,507.00. On Debtors' Schedule D, titled "Creditors Holding Secured Claims," they separately listed Key Bank as the first mortgagee holding a secured claim in the amount of $46,250.59 and Countrywide as the second mortgagee holding a secured claim in the amount of $28,256.45. The Main Parcel consists of 111.3 acres improved by Debtors' residence and a barn. It is identified for tax purposes by the Town of Hermon as tax map parcel number 146.003-1-26.1. Debtors did not separately list on Schedule A a contiguous parcel located at "30 40 50 Woods Road" ("Parcel Two"), which consists of 49.5 acres of vacant land. Parcel Two is identified for tax purposes by the Town of Hermon as tax map parcel number 146.003-1-25. On Schedule C, titled "Property Claimed as Exempt," Debtors claimed a homestead exemption pursuant to New York Civil Practice Law and Rules ("NYCPLR") § 5206(a) and they used the same property description as that used on Schedule A.[4] Debtors did not separately identify or list Parcel Two on Schedule C or on their Statement of Intention.

At the time of filing, Debtors' realtor, Douglas R. Hawkins ("Hawkins") of Sandstone Realty, estimated the fair market value of the Main Parcel to be $90,000.00. Parcel Two had a fair market value according to the tax assessment records of $10,500.00. In connection with the Motion, Debtors obtained a "retro" analysis appraisal prepared by Andrew J. Marsjanik of AJM Residential Appraisal wherein the appraiser stated: "The subject parcel included in this appraisal

---

[4] At the time of Debtors' filing, NYCPLR § 5206(a) permitted joint debtors to claim a homestead exemption on jointly owned real property of $100,000.00.

is separated from another parcel owned by the client. These two parcels were thought to be one single site . . . but per the Town of Herman and the tax map reviewed by the appraiser are not." The appraiser valued the Main Parcel using a sales comparison approach at $98,000.00. (Ex. 1 to ECF No. 59.) Upon Debtors' request, the appraiser subsequently amended his appraisal to include both the Main Parcel and Parcel Two, which he valued using a sales comparison approach at $98,500.00. (Ex. 1 to ECF No. 62.)

Debtors acquired the Main Parcel and Parcel Two through a Land Sale Contract executed in 1982 and completed in 2000. (Ex. 2 to ECF No. 59.) The Abstract that Debtors received when they purchased the real property included separate tax map numbers, physical addresses, acreage amounts, and assessed values for the Main Parcel and Parcel Two. The sellers conveyed five separate parcels to Debtors, including the Main Parcel and Parcel Two, by virtue of a single Warranty Deed. (Ex. 3 to ECF No. 59.) Both secured loans issued to Debtors by Key Bank in 2001 and by Countrywide's predecessor in interest in 2004 were collateralized by the Main Parcel and Parcel Two. (Exs. 4–6 to ECF No. 59.)

*Arguments*

Debtors make two arguments in support of the Motion. First, they assert that their homestead exemption as written on Schedule C included Parcel Two. In support of this argument, Debtors point to the fact that Schedule C reflected the combined fair market value of the Main Parcel and Parcel Two as known by Debtors at the time of filing by virtue of the Hawkins' opinion letter and the tax bill, respectively. Second, Debtors assert that their homestead exemption was intended to and should be construed to include Parcel Two. In that regard, Debtors emphasize that Parcel Two is contiguous to the Main Parcel and they have conducted all transactions from the point of the Land Sale Contract to recent loan transactions as

if the Main Parcel and Parcel Two were a single parcel of real property. Debtors aver that the Motion should be granted to avoid the judicial liens attached to both the Main Parcel and Parcel Two now that they have provided additional information to satisfy the statutory requisites of § 522(f).

In response to Debtors' first argument, White's Lumber contends that Debtors' Schedule C did not affirmatively declare Parcel Two as exempt. By failing to specifically list Parcel Two by physical address, acreage, tax map number, or some other indicator, White's Lumber argues that Debtors failed to provide notice of their intent to exempt the same. White's Lumber's position is that any creditor or party in interest who viewed Schedule C would have assumed that only the Main Parcel was exempted, and would therefore have found no reason to object to Debtors' claimed exemptions. In response to Debtors' second argument, should the Court construe Debtors' Schedule C liberally to possibly encompass Parcel Two, White's Lumber contends that Parcel Two must nonetheless be treated separately because Debtors have not proven that Parcel Two constitutes homestead property as that term is construed for purposes of NYCPLR § 5206(a). White's Lumber draws the Court's attention to certain facts, including that Parcel Two has a separate physical address not listed anywhere on Debtors' petition or Schedules, Parcel Two is unimproved, Debtors have not shown a specific use for the property, and Debtors' realtor and appraiser have considered and treated Parcel Two a separate and distinct parcel. White's Lumber therefore asks the Court to deny Debtors' request to extend lien avoidance relief to Parcel Two.

*Discussion*

A debtor who moves under § 522(f) to avoid a creditor's lien bears the burden of proof by a preponderance of the evidence on every statutory element. *In re Schneider*, 2013 Bankr.

LEXIS 4730, at *11 (Bankr. E.D.N.Y. Nov. 8, 2013) (citing *In re Armenakis*, 406 B.R. 589, 604 (Bankr. S.D.N.Y. 2009)).  To protect a debtor's claimed exemption in his or her principal residence, § 522(f) authorizes a debtor to "avoid the fixing of a [judicial] lien[5] on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section . . . ." 11 U.S.C. § 522(f)(1).  As a preliminary matter, in order to invoke § 522(f), the debtor must have affirmatively declared an exemption in the real property subject to the judicial lien.  *In re Kiproff*, 2006 Bankr. LEXIS 5160, at *1 (Bankr. N.D. Ind. Aug. 16, 2006) ("Where a debtor has not claimed an exemption in the property subject to a judicial lien, there is nothing for § 522(f) to protect.") (collecting cases).  The debtor is not, however, required to prove that he has equity in the property in order to obtain relief under § 522(f)(1).  *In re Patterson*, 482 B.R. 755, 764 (Bankr. D. Vt. 2012) (citing *In re Brody*, 297 B.R. 5, 7 (Bankr. S.D.N.Y. 2003); *In re Wallace*, 453 B.R. 78, 82–83 (Bankr. W.D.N.Y. 2011)).

Section 522(f)(2)(A) provides a statutory formula for determining whether a judicial lien "impairs an exemption to which the debtor would have been entitled" and provides that "a lien shall be considered to impair an exemption to the extent of the sum of the lien, all other liens on the property, and the amount of the exemption that the debtor could claim if there were no liens on the property."  11 U.S.C. § 522(f)(2)(A)(i)–(iii).  Therefore, under § 522(f), "the debtor may avoid the fixing of a judicial lien unless there is sufficient equity in the residence to satisfy all consensual and non-avoidable liens and to satisfy the full amount of the debtor's homestead exemption as set [forth] in either § 522(d)(1) or in applicable state law."  *In re Schneider*, 2013

---

[5] The Bankruptcy Code defines a "judicial lien" as any "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

Bankr. LEXIS 4730, at *18–19 (citing *In re Moltisanti*, 2012 Bankr. LEXIS 5025, at *3 (Bankr. E.D.N.Y. Oct. 24, 2012)).

Because the existence of a homestead exemption covering the real property to which the subject judicial lien attaches is a prerequisite to § 522(f) relief, Debtors have the burden of showing that Parcel Two has been claimed as exempt on Schedule C. Debtors have not sought to amend Schedule C and are therefore presently bound by their chosen description.[6] As to real property, Debtors' Schedule C lists only "Real Property Located at 1167 CR. 19."

"By filing Schedule C, the debtor gives notice to all parties in interest of which property, or property interests, the debtor claims as exempt, thereby providing parties in interest with an opportunity to object." *In re Scheider*, 2013 Bankr. LEXIS 4730, at *15 (citing *Schwab v. Reilly*, 130 S.Ct. 2653, 2663 (2010)). "'There are . . . no bright-line rules for how much itemization and specificity is required [on the debtor's schedules and statements.]'" *In re Fisher*, 486 B.R. 200, 206 (Bankr. D. Kan. 2013) (quoting *In re Mohring*, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992)). "'What is required is reasonable particularization under the circumstances.'" *Id.* At a minimum, the Schedule C description must be sufficient to identify the existence of and the debtor's ownership of the property. *Id.* at 207. On all pertinent documents submitted to the Court in this matter, including the Land Sale Contract, Warranty Deed, and tax maps, Parcel Two is identified as being separate and distinct from the Main Parcel. Notwithstanding the same, Debtors utilized

---

[6] Given the procedural posture of this case, Debtors cannot amend their Schedule C as a matter of right at this juncture. *See* Fed. R. Bankr. P. 1009(a) (affording the debtor the right to amend his schedules as a matter of course *at any time before the case is closed*) (emphasis added). Although the issue of amendment is not presently before the Court, the Court notes that a debtor may move to amend his schedules in an open case after the time for objecting to exemptions has expired or in a reopened case. *See, e.g., Green v. HAPO Cmty, Credit Union (In re Green)*, 2013 Bankr. LEXIS 4181, at *8 (B.A.P. 9th Cir. July 25, 2013) (reversing the bankruptcy court's disallowance of the debtor's amended homestead exemption and denial of the debtor's § 522(f) motion filed in the reopened case four years after the case had closed upon holding that the bankruptcy court lacked discretion to disallow amended exemptions absent a showing of bad faith on the part of the debtor or of prejudice to third parties); *Brodsky v. Taylor (In re Brodsky)*, 2007 Bankr. LEXIS 3058, at *4 (Bankr. N.D. Ga. Mar. 13, 2007) ("Courts routinely permit debtors to reopen cases where schedules are amended.").

only a physical address for the Main Parcel and neglected to reference Parcel Two in any manner on either Schedule C or their Statement of Intention that would put creditors on notice of their exemption claim as to Parcel Two, *i.e.,* by physical address, reference to a second or contiguous parcel, inclusion of a tax map number, *etc.* Debtors' Schedule C, notwithstanding the alleged inclusion of Parcel Two's value–which creditors would not have recognized in the absence of proof of value for both the Main Parcel and Parcel Two, was insufficient to create a valid claim of exemption in Parcel Two. Accordingly, this standard has not been satisfied and Debtors' first argument fails.

Even if Debtors' Schedule C were amended to clearly claim Parcel Two under their homestead exemption, they would still need to prove their substantive right to the same. *In re Howe*, 2009 Bankr. LEXIS 2831, at *10 (Bankr. N.D.N.Y. June 26, 2009) (While a debtor may have the right to freely amend Schedule C, this does not equate to a substantive right to the exemption."), *aff'd*, *Howe v. Dribusch (In re Howe)*, 2010 U.S. Dist. LEXIS 84908 (N.D.N.Y. Aug. 18, 2010). The law is clear in this District on the issue of whether two or more parcels of real property may be combined by a debtor and treated as homestead property under NYCPLR § 5206(a). *In re Flatt*, 160 B.R. 497, 500 (Bankr. N.D.N.Y. 1993) (noting that the creation of a homestead exemption is largely a question of fact based primarily on a determination of the owner's intent) (collecting cases). Under the applicable test set forth in *In re Flatt*, intent alone is not enough. Drawing on principles of eminent domain law, the court stated that three additional requirements should be considered when determining whether separate parcels can be said to comprise a single unit: (1) there is unity of title or ownership; (2) there is unity of use; and (3) the parcels are contiguous. *Id.* at 501.

Debtors have satisfied their burden on the question of intent and unity of title or ownership but they must also show that Parcel Two is an integral part of or is used to enhance their homestead or Main Parcel. The record is devoid of any facts relating to Debtor's use of Parcel Two. Debtors have not shown that they actually use Parcel Two in conjunction with the Main Parcel for residential purposes. Accordingly, Debtors have failed to carry their burden in this respect. Based upon the record, Debtors' second argument also fails.

## *Conclusion*

Debtors cannot utilize § 522(f)(1)(A) to avoid lienholders' judicial liens attached to Parcel Two. That part of Debtors' Motion must be denied. The Court having applied the formula set forth in § 522(f)(2)(A) to take into account all judicial liens attached to the Main Parcel sought to be avoided by Debtors, including the judicial lien held by White's Lumber, it finds that Debtors' Motion may be granted to avoid all lienholders' judicial liens attached to the Main Parcel only. The Court will issue a separate order consistent with this Letter-Decision and Order.

Dated: July 10, 2014  
Utica, New York

/s/Diane Davis_____  
Hon. Diane Davis  
United States Bankruptcy Judge